LATALLO ETABLISSEMENT, Respondent, v MORGAN GUARANTY TRUST COMPANY OF NEW YORK, Appellant.

First Department, April 10, 1990

APPEARANCES OF COUNSEL

*William Schurtman* of counsel *(Walter, Conston, Alexander & Green, P. C.,* attorneys), for respondent.

*Donald N. Dirks* of counsel *(Philip C. Potter, Jr.,* and *Sharon W. Lindsay* with him on the brief; *Davis Polk & Wardwell,* attorneys), for appellant.

## OPINION OF THE COURT

MILONAS, J.

The Supreme Court should have granted the motion by defendant Morgan Guaranty Trust Company of New York for summary judgment dismissing the complaint against it since there are no factual issues presented requiring further proceedings. Indeed, what is at issue herein is a dispute between members of an Argentine family over funds which they maintained at defendant bank in the accounts of plaintiff Latallo Etablissement, a Lichtenstein corporation organized to manage these moneys. Morgan Guaranty is simply an incidental participant through no negligent or other wrongful conduct on its part.

When Latallo was created in 1982 by Martha Facio de Staudt and her husband, J. P. Guillermo Staudt, a demand deposit account and a money market account were established at Morgan Guaranty's New York office. Martha de Staudt was made an authorized signatory, singly. While her husband was initially an authorized signatory, he was subsequently removed as such prior to the transfers that are the subject of the instant litigation and was not reinstated as a signatory until February 1, 1988. Their son, Guillermo Nicolas Staudt, who had his own business in Buenos Aires, was also an authorized signatory, singly, until February 1, 1988. Between October 15, 1987 and December 14, 1987, defendant received written instructions, ostensibly signed by Martha de Staudt, for five separate transfers of money, totaling $325,000, to certain designated transferee banks for named beneficiaries. In addition, a written instruction, also purportedly signed by Martha de Staudt and dated December 15, 1987, directed Morgan Guaranty to reduce plaintiff's investment in its money market account to $25,000 and to credit the balance to its demand deposit account. Defendant effected the money transfers in conformity with the instructions.

On January 25, 1988, Martha de Staudt's husband, J. P. Guillermo Staudt, visited defendant's New York office and

examined its records of Latallo's accounts. He thereupon advised Morgan Guaranty's vice-president, J. Kevin Murphy, that the supposed signatures of Martha de Staudt on the written instructions for money transfers were fraudulent. Following subsequent unsuccessful efforts to contact Martha de Staudt, but based upon the representation of her husband that the signatures were fraudulent, defendant placed a tracer on the funds that had been transferred to other banks. The next day, defendant, learning that the funds had all been ultimately deposited in accounts of the Staudt's son, Guillermo Nicolas Staudt, maintained with banks in Argentina, informed those banks that a claim of fraud had been raised in connection with the transfers. Guillermo Nicolas Staudt, who was in Buenos Aires, Argentina, then telephoned Susan Prado, an officer in Morgan Guaranty's New York office, stating that he had been notified by his Argentine banks that there was a question concerning the legality of the transfers to his accounts and asking that defendant substantiate to the satisfaction of the receiving banks that the transfers had been legitimate. Susan Prado, therefore, arranged for Guillermo Nicolas Staudt to meet on January 27, 1988 with Finn Longinotto, a vice-president of Morgan Guaranty, who was in Buenos Aires on other business, at which time son Guillermo signed a statement providing that "[t]his is to confirm my instructions given on five separate occasions by telephone to Susan Prado and/or Maurice Batista (as detailed below and confirmed in writing with memos dated as detailed) [listing the dates, amounts and recipients]. * * * Please inform the respective banks above that the instructions were correct and ask them to communicate this further to the respective Argentine banks". This statement, which was delivered by Guillermo Nicolas Staudt to Longinotto, contains the precise dates, amounts and recipient banks as specified in the earlier transfer instructions. It is uncontroverted that the person who presented himself to Longinotto was, in fact, son Guillermo and that his signature on the statement was genuine. Moreover, there is no doubt that when son Guillermo executed the statement and gave it to defendant's representative, he was fully authorized, singly, to instruct Morgan Guaranty to effectuate transfers from Latallo's accounts.

Based upon the signed statement of son Guillermo, defendant informed the Argentine banks that they could release any restrictions on the accounts of Guillermo Nicolas Staudt. On January 28, 1988, Morgan Guaranty's Vice-President Mur-

phy received a letter by telefax from one Peter Marxer, a Lichtenstein attorney who had no signing authority for the Latallo accounts at defendant bank. Marxer claimed to be president of Latallo and asserted that "I understand that your bank has contacted certain banks and other parties with respect to funds which were transferred from the account * * * during the period October 23, 1987 to December 15, 1987. I request that you instruct such banks that the funds were withdrawn from such account without authorization and that such funds should remain frozen until resolution of this dispute." On February 1, 1988, Marxer sent another telefax message to Murphy, along with a certificate of a corporate resolution removing son Guillermo as an authorized signatory on Latallo's accounts and reinstating the father J. P. Guillermo. This second letter declared that "[i]n furtherance of my letter to you of last Friday, I hereby request that you release whatever freeze or other restrictions which may have been placed on the accounts maintained by Guillermo Nicolas Staudt with banks with whom you have contact."

In this action, plaintiff is seeking to recoup on behalf of the parents the moneys transferred by their son to his personal accounts, thereby compelling defendant, in turn, to endeavor to recover these funds from son Guillermo in Buenos Aires or wherever else he may be found. Yet, it was the parents who made the son an authorized signatory and allowed him, singly, to have uncircumscribed access to Latallo's accounts. The fact that he may not have exercised his authority in the manner in which his parents would have preferred is hardly the concern of Morgan Guaranty. Regardless of whether or not Guillermo Nicolas Staudt, for some reason known only to himself, chose to sign his mother's name to the written instructions instead of his own, he was still an authorized signatory in his own right. Consequently, what appears to be involved here is not the case of a stranger to an account forging the name of a proper signatory thereof but the bizarre situation of one authorized signatory forging the name of another. In the first instance, the forger has no right to the account; in the second, the forger has as much right to the account as the person whose name he signed.

The Supreme Court, in denying defendant's motion for summary judgment dismissing the complaint, perceived unresolved questions of fact as to whether the signatures of Martha de Staudt on the written instructions were operative and whether the cash withdrawals had been ratified. However,

neither of these matters warrant a trial. Under section 3-404 (1) of the Uniform Commercial Code, an "unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it". While recognizing that ratification would be a defense to the instant action, the Supreme Court, notwithstanding the unambiguous language in Marxer's letter of February 1, 1988 directing defendant to unfreeze the accounts of Guillermo Nicolas Staudt, accepted as sufficient to deny summary judgment the conclusory and self-serving assertions by plaintiff that there was no intention to ratify the withdrawals.

Plaintiff Latallo, as principal, must either ratify or repudiate the entire transaction and cannot elect to ratify only that portion advantageous to its interests (see, Marine Midland Bank v Russo Produce Co., 50 NY2d 31). After acknowledging the existence of a family dispute and removing son Guillermo as an authorized signatory, Latallo still instructed defendant to lift the freeze on the transferred funds. Plaintiff claims that it requested that Morgan Guaranty remove any restrictions on the accounts of Guillermo Nicolas Staudt because the parents did not want their son to be able to blame them for causing the disruption or collapse of his business. Thus, on the one hand, plaintiff contends that it did not ratify the withdrawals, but on the other hand, it admits that the parents authorized the unfreezing of son Guillermo's accounts since they did not wish to damage his business. This explanation for the decision by the elder Staudts, inherently contradictory on its face, is incomprehensible except as an attempt by plaintiff to shift responsibility from the parents to the bank for the consequences of the former's evident misjudgment of their son.

Further, plaintiff is not alleging that the purported forgeries might have been committed by a third unrelated party. If the signatures of Martha de Staudt were, indeed, forged, then the perpetrator was her son, an authorized signatory, and a depository bank is mandated to obey the commands of an authorized depositor (see, German Educ. Tel. Network v Bankers Trust Co., 109 AD2d 684). Certainly, plaintiff does not challenge the fact that son Guillermo was a duly authorized signatory of Latallo's accounts or urge that more than one signature was necessary to implement the transfers. Therefore, whatever name son Guillermo signed on the written instructions, it is clear that he was empowered to direct the transfer of money, and, while his authority was still in effect,

pursuant to his written statement of January 27, 1988, he later reaffirmed his prior instructions.

Accordingly, defendant is entitled to summary judgment dismissing the complaint on two grounds. First, the money withdrawals were clearly ratified by plaintiff, as manifested in the letter of February 1, 1988, and, second, Guillermo Nicolas Staudt was a duly authorized signatory with whose instructions the bank was obliged to comply. It should also be noted that contrary to plaintiff's attempt to depict forgery as the underlying subject of this litigation, it is not. Son Guillermo had authority, singly, to direct that every last penny from Latallo's accounts be transferred elsewhere, a right generously bestowed upon him by his parents. Consequently, his purported signing of his mother's name is not at all pertinent nor is the adequacy of Morgan Guaranty's internal review procedures with respect to detecting forgeries and whether the bank complied with those procedures (see, *Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340).

Therefore, the order of the Supreme Court (Herman Cahn, J.), entered on May 31, 1989, which denied defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, and the motion granted, without costs or disbursements.

Ross, J. P., Asch, Rosenberger and Ellerin, JJ., concur.

Order, Supreme Court, New York County, entered on May 31, 1989, unanimously reversed, on the law, without costs and without disbursements, and the motion for summary judgment dismissing the complaint granted.